

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 17 2025

CLERK, U.S. DISTRICT COURT
By_____
Deputy

UNITED STATES OF AMERICA

v.

REBECCA MORGAN (01)

No. 4:25-MJ-495

## CRIMINAL COMPLAINT

I, Paul Poston, being duly sworn, state the following is true and correct to the best

of my knowledge and belief:

### COUNT 1: ACCESSORY AFTER THE FACT

On or about July 5, 2025, in the Northern District of Texas, defendant's **Rebecca Morgan**, knowing that an offense against the United States has been committed by Benjamin Hanil Song, did receive, relieve, comfort, and assist Benjamin Hanil Song, in order to hinder and prevent Benjamin Hanil Song's apprehension, trial, and punishment, in violation of 18 U.S.C. § 3.

### Agent Overview

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have

been since September 2020. I am currently assigned to a squad in Fort Worth, Texas that

is responsible for investigating terrorism cases. I am responsible for conducting

investigations into various threats, including international terrorism related matters and

frequently assist in cases involving racially motivated violent extremism, militia

extremism, weapons of mass destruction violations, and violent antigovernment

extremists. Prior to working in Fort Worth, Texas, I worked counterintelligence matters

in Bryan, Texas.

I have received training in such areas as counter terrorism and counterintelligence and as such worked investigations related to counter terrorism and counterintelligence which often involve the use of physical surveillance, cooperating witnesses, financial and telephone toll record analysis, the execution of search and arrest warrants, and the debriefing of witnesses and subjects. I also have experience in the review of evidence obtained during the execution of search warrants.

2.     The facts in this complaint come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses, and the review of records. This complaint is intended to show merely that there is sufficient probable cause that defendant **REBECCA MORGAN** committed the crime alleged and does not set forth all of my knowledge about this matter

PROBABLE CAUSE

3.     Prairieland Detention Center, located at 1209 Sunflower Lane, Alvarado, Texas, was and is being used as a Department of Homeland Security ("DHS") detention facility that holds persons related to immigration violations or who are awaiting deportation hearings.

4.     Prairieland Detention Center has Correctional Officers who are contracted by DHS as officers to perform official duties on behalf of DHS.

5.     On July 4, 2025, at approximately 10:37 p.m. Central Daylight Time, a group of around ten-to-twelve individuals wearing all black began shooting fireworks towards the Prairieland Detention Center.

6.    Around 10:47 p.m., one or two individuals broke off from the main group and began to graffiti and damage vehicles and a guard structure in the parking lot at the facility, including the following:







7.    Around 10:56, the Correctional Officers called 911.

8.    Around 10:58, two unarmed Correctional Officers performing official duties for DHS at the Prairieland Detention Center came out to the fence line separating the facility from the parking lot and the woods and attempted to talk to the vandals.

The Correctional Officers then exited the fence line into the parking lot and approached the vandals.

9.    Meanwhile, a person wearing a green mask can be seen standing outside the woods just north of the intersection of Tanglewood Drive and Sunflower Lane, and appeared to be signaling to the vandals with a flashlight.

10.    At the same time, around 10:59 p.m., an Alvarado Police Department ("APD") officer arrived in the parking lot at the Prairieland Detention Center in response to the 911 call by the DHS correctional officers in order to assist the DHS correctional officers in their official duties. Immediately after the APD officer got out of his vehicle, an assailant in the woods opened fire, shooting the APD officer in the neck area. The assailant in the green mask, standing near the woods on Sunflower Lane, then also opened fire at the unarmed DHS correctional officers. In total, the assailants shot approximately 20 to 30 rounds at the DHS correctional officers. Police later recovered spent 5.56-caliber casings at the locations of both shooters. That caliber is typically used with AR-15-style rifles.

11.    The shooting was captured on both CCTV and the APD officer's body-worn camera.

12.    Police later found a Franklin Arms FAI-15 rifle west of the shooting on Tanglewood Drive. The rifle had a bullet jammed in the chamber, thereby causing it to malfunction. A second AR-15-style rifle, a Palmetto State Armory PA-15 rifle, was found abandoned in the woods across from the Prairieland Detention Center, in the vicinity of spent 5.56 casings, along with two body-armor plate carriers with loaded AR-

15 magazines. Records show that both rifles were purchased by Benjamin Hanil Song (Song). A pistol magazine was also recovered nearby.

13.     Shortly thereafter, a Johnson County Sheriff's Office ("JCSO") detective who was enroute to Prairieland Detention Center was radioed and told that a red/maroon Hyundai was observed fleeing the scene and that it was headed in the detective's direction. The JCSO detective made a traffic stop on a 2007 red/maroon Hyundai van less than a mile away, as shown below in Figure 1:



14.     During the traffic stop, JCSO officers observed a black pistol in plain view in the van and asked the sole occupant, identified as Bradford Morris—who has been charged in a separate complaint—if there were any other firearms in the van. Morris told the JCSO officers that there was another firearm in the backseat. At that time, the officers observed an AR-15-style rifle in the backseat of the van.

Morris was removed from the van and detained. The JCSO officers also saw two Kevlar ballistic-style vests, one of which was in the backseat and the other was in the back of the van. There was also a ballistic helmet in the van. Morris had a loaded magazine in his pocket that matched the pistol, and a hand-held radio in his possession. Another AR-15-style rifle was found in the back of Morris's van. Records show that Song purchased one of these AR-15 rifles, a Palmetto State Armory PA-15.

15.    Morris admitted that he had been at the Prairieland Detention Center and claimed that he met some people online and transported some of them down from Dallas to the Prairieland Detention Center to "make some noise." Morris claimed ownership of all the firearms in the vehicle. The JCSO officers took Morris into custody.

16.    At approximately 11:10 p.m., JCSO Deputies, responding to the Prairieland Detention Center, made contact with seven additional subjects on foot at the intersection of Tanglewood Dr. and Burnett Blvd., approximately 300 yards west of where the assailants shot the APD officer and at the DHS correctional officers. The subjects were identified as Savanna Batten, Nathan Baumann, Joy Gibson, Maricela Rueda, Seth Sikes, Elizabeth Soto, and Ines Soto, —who have been charged in a separate complaint. They were dressed in black, military-style clothing, some had on body armor, some were covered in mud, some were armed, and some had radios.

17.    Additional firearms, magazines containing ammunition, and a total of twelve sets of body armor were found during a search of the vehicles, persons, and area around the Prairieland Detention Center, including the following:







18.     Baumann was wet and his clothing was covered with burs, indicating that he had

been crawling around in the woods. He also had a backpack that contained a can of spray

paint and flyers, including the following:





Police also found, in the area where Baumann was arrested, an iPhone and an identification card belonging to Baumann.

19.    Gibson had two cell phones in her backpack inside a "Faraday bag." Based on my training and experience, I know that Faraday bags are used to block certain electromagnetic signals, including phone signals and are commonly used by criminal actors to try to prevent law enforcement from tracking location information through cell phones. Gibson also had a Derya arms pistol in her backpack, which records show had been purchased by Song in October 2024.

20.    Sikes had a handgun in his waist band, as well as an AR-15-style upper and lower receiver broken down in a backpack he was wearing. Police later determined that Song purchased the AR-15-style rifle approximately ten days prior to the shooting from a pawn shop in Grand Prairie, Texas, in Tarrant County. Sikes claimed the guns were his and claimed that they were for his own protection and that he never intended to use them.

21.     Evetts was the registered owner of a red 2016 Mazda CX-5 that was observed parked at Prairieland Detention Center during and after the encounter. On July 5, 2025, at approximately 2:00 a.m., law enforcement encountered Evetts dressed in black, military-style clothing walking along Highway 67 near Venus, Texas, approximately three miles from the Prairieland Detention Center. After confirming his identity and connection to the Mazda left on scene, Evetts was arrested by the Venus Police Department ("VPD"). During a search incident to arrest, VPD officers found a black balaclava mask, a pair of tactical-style gloves, and a pair of safety goggles. An officer asked Evetts where he was coming from and he said, "I do not know," or words to that effect. An AR-15-style rifle and a pistol were later found in Sikes' car.

22.     On or about July 5, 2025, pursuant to a valid search warrant, law enforcement searched 2452 56th Street, Dallas, Texas, Morris's residence. Police recovered approximately nine additional firearms, three body-armor vests, cans of spray paint, and fireworks. In addition, historical cellphone location data indicates that Morris's house was a staging location before the assailants went to the Prairieland Detention Center.

23.     At the residence was Arnold, whom a codefendant confirmed was at the Prairieland Detention Center during the assault.

24.     On July 6, 2025, at 10:55 a.m., Rueda placed a phone call to Daniel Rolando Sanchez, who is charged in a separate complaint. Rueda told Sanchez that her car—which is registered to her home address in Fort Worth—was parked on the same block as Morris's residence in Dallas. Rueda told Sanchez to tow her vehicle and that her cellphone was located in the back of her car.

She told Sanchez that her child knew the passcode to her cellphone and to "do what you gotta do." Rueda expressed concern about the possibility of police executing a search warrant at her house, and Sanchez told Rueda that he had already gone to Rueda's house, he told her he did not believe her house had been searched, and he said that they were good. I understood this to mean that Sanchez believed that Rueda's house had not yet been searched by police. Based on the context of the conversation and other information, I believe that Rueda and Sanchez were talking about Rueda's home in Fort Worth.

25.    On July 7, 2025, at 10:49 a.m., FBI surveillance team went to a residence in Garland, Texas, which they believed was the residential address for Sanchez. FBI observed a vehicle registered to Sanchez at the residence and saw Sanchez carrying multiple packages from his residence to his truck. FBI followed Sanchez to an apartment in Denton, Texas, and saw him take what they believed was a box from his truck to the apartment. The FBI executed a search warrant on the Denton apartment and found the box carried by Sanchez. Inside the box were numerous anti-government propaganda, including the following:



26. As described above, pursuant to traces conducted by the Bureau of Alcohol Tobacco, Firearms, and Explosives, Song purchased four of the guns that were found in connection with the Prairieland Detention Center shooting.

27. The Franklin Armory FAI-15 abandoned at the crime scene, which Song had purchased, had a binary trigger. A binary trigger is used to "double" a regular rate of fire, allowing a shooter to fire more rapidly than a standard semiautomatic gun. I know from my training and experience that a binary trigger is typically installed after purchase from a licensed firearm dealer.

28. On July 6, 2025, a white 2017 Mercedes Benz registered to a relative of Song was found on the same block as 2452 56th Street, Dallas, which was Morris's residence. A DFW Airport camera took a photo of an individual who I believe to be Song driving the white Mercedes on May 23, 2025, as shown below:




29.     According to information provided by a cooperating defendant, Song had travelled with Morris to Prairieland Detention Center on the night of the attack. The cooperating defendant recognized the gunfire during the attack as coming from a rifle with a binary trigger, which is consistent with the abandoned FAI-15 that Song had purchased.

30.     In addition, analysis of location data associated with Song's cellular telephone indicates the device was located within several hundred meters of the Prairieland Detention Center on July 4, 2025, beginning at approximately 11:30 p.m. (after the shooting). The phone remained in that area throughout the day on July 5. Based on this information, it was believed that Song was hiding in the woods until dark the day after the shooting before fleeing the area.

31.     On July 8, 2025, Thomas, an occupant of 1931 Atlantic Street Apt. A, Dallas, Texas, was interviewed by agents during a court-authorized search of his residence.

Initially, Thomas denied knowing Song and claimed he did not recognize him when shown an unmarked photo. During the ongoing search, mail addressed to Song was found in the apartment. Once Thomas was confronted with the presence of Song's mail in his apartment, Thomas acknowledged he did in fact know Song. Thomas then positively identified the photo of Song. Thomas stated that he had known Song since approximately 2022 and resided with Song from approximately September 2024 to late June 2025.

32.    Thomas stated that from July 1st through July 8th, he was housesitting for a friend named Zach Armstrong (Armstrong). Law enforcement databases indicate that Armstrong resides at the 7900 at Park Central Apartments located at 7900 Churchill Way, Apt 5401, Dallas, Texas.

33.    Agents questioned Thomas about his whereabouts on July 4th and July 5th. As to his whereabouts on July 4, 2025, the date of the shooting, Thomas stated he woke up at Armstrong's residence and remained there until approximately 6:00 PM. At approximately 6:00 PM, Thomas departed Armstrong's residence to travel to his residence at 1931 Atlantic Street, Apt. A, Dallas, TX. Thomas arrived at 1931 Atlantic Avenue at approximately 7:00 PM and observed Joy Gibson in the apartment. Thomas did not interact with Gibson and departed the residence at approximately 7:30 PM and later returned to Armstrong's residence.

34.    As to his whereabouts on July 5, 2025, the day after the shooting, Thomas claimed he woke up at Armstrong's residence at approximately 8:00 AM. Thomas claimed he did not leave Armstrong's residence until approximately 8:00 PM, when he left to meet three friends at the Days Inn Hotel in Cleburne, Texas, named "Kit," "Ed," and "Natch."

35.     Agents reviewed data from license-plate readers to corroborate Thomas's statements. On July 5, 2025, at 8:01 PM, license-plate readers picked up Thomas's registered vehicle, a white Honda Civic bearing Texas license plate: MWN 2466 (Honda), travelling westbound on Highway 67 in Venus, Texas, towards Alvarado. At 9:33 PM CST, a license-plate reader located on Cummings Drive in Alvarado captured Thomas's Honda travelling northbound on North Cummings Drive in Alvarado. This license-plate reader is located approximately 1.5 miles west of the Prairieland Detention Center in Alvarado. However, this route is not consistent with westbound travel towards Cleburne, Texas, via Highway 67, which was Thomas's claimed destination.

36.     As part of their investigation, law enforcement also obtained location information for Song's known phone number. The phone number attributed to Song had cellular connectivity at various times throughout the day on July 5, 2025, which utilized cellular towers near the Prairieland offense location. At approximately 9:30 PM, three minutes before Thomas's vehicle was captured on license-plate readers, Song's cellular device disconnected from the cellular network and had no additional activity until the morning of July 6, 2025. When Song's device reinitiated contact with the cellular network it was located in the area of U.S. Highway 75 and Interstate Highway 635 in Dallas, Texas.

37.     Returning to Thomas's Honda and its travel path on July 5, 2025, at 10:18 PM, Thomas's Honda was scanned on a license-plate camera in Dallas, Texas, near the intersection of Hampton Road and Ledbetter Drive. Based on my review of Google Maps, the most direct route to either the Atlantic address or the Churchill Way address would not necessitate an exit to Hampton Road near this license-plate reader. However,

this reader is approximately four miles from the 56th Street address that was the main location where the conspirators met during the preparation for the attack on the Prairieland Detention Center and the location to where Song's registered vehicle was located. A federal search warrant at the 56th street address was actively being executed during this timeframe.

38.     License-plate scans for the Honda document a scan on the morning of July 6, 2025, at 11:15 AM, near the intersection of Coit Road and Spring Valley Road, which is approximately one and half miles north of where Song's phone last had cellular activity in Dallas, Texas.

39.     On July 10, 2025, at approximately 7:00 PM, law enforcement executed a state search and arrest warrant at Thomas's residence 1931 Atlantic Street Apt. A. Thomas was arrested for the Texas state offense Smuggling.

40.     Subsequent to the execution of both search and arrest warrants, Thomas's registered vehicle was towed to the FBI Dallas Field office. A state search warrant for Thomas's vehicle was obtained and FBI agents conducted the search locating a loaded 30-round AR-15 magazine and a Wal-Mart receipt dated July, 6, 2025, at 11:29 AM. The purchase was made at 15757 Coit Rd. Dallas, TX 75248. The Wal-Mart purchase was for: (1) a pair of size 30x30 jeans; (2) a pair of size 8 men's shoes; and (3) a medium gray t-shirt.

41.     The above-mentioned clothing sizes are consistent with that of FBI fugitive Benjamin Song. Thomas is a taller, heavier-set male, approximately 300lbs. Investigators believe this Wal-Mart receipt further supports the probable cause that Thomas did pick

up Song from Alvarado after the Prairieland incident and appears to have purchased a change of clothes for Song. Investigators believe and have reason to believe the clothes were purchased given evidence Song was hiding in the field near the Prairieland Detention Center subsequent to the attack on July 4, 2025.

42.     Pursuant to a search warrant, law enforcement obtained information and data from Thomas's cellphone. On Thomas's cellphone is the Signal App, which shows Thomas was the member of at least two Signal Chat groups that also included Song as a member of the chat group. One Signal chat group was called CC-MWC. On that chat group, Thomas went by the moniker: "Roy, come and get this cat." The investigation determined that one of Song's monikers was "Champagne," and Champagne was also in this chat group. The messages in this chat group were set to automatically delete after a certain time-period. Of the messages in this chat group that had not automatically deleted at the time law enforcement reviewed it showed that sometime on July 5, Song, going as Champagne, changed his moniker in the chat group from Champagne to "Delete." Then there is a message, sent around 5:24am on July 5, from a person called, Greenhouse, directed at Thomas, going as Roy, come and get this cat, stating "can we get a removal here too please." After that message, Roy, come and get this cat, removes the user, Delete, from the chat group.

43.     Another Signal chat group that Thomas, as Roy, come and get this cat, was a part of was CC-MWC-Re: Jack. This group also had Greenhouse and Song (as Champagne) as members. There is a message on July 5, around 5:04AM that states "we are removing Champagne from stuff right?" Then Song, as Champagne, changes his moniker from

Champagne to Delete.  Then there is a message directed at a user called, Biscuits, to remove Champagne from the chat.  Biscuits then removes Delete from the chat group.

44.     On July 12, 2025, in a subsequent interview with Thomas, Thomas said the following.  On July 5, 2025, he was contacted by an individual he identified as "Hippie" via Signal. Over the course of the investigation, law enforcement determined Hippie to be a moniker used by Lynette Sharp. Law enforcement also identified Sharp to be in other Signal chats used by the group targeting Prairieland, which included Song, using the moniker "Candied Dynamite."

45.     Sharp requested of Thomas that he meet her and two other females at the Days Inn hotel in Cleburne, TX. Thomas, of course, knew about the shooting on July 4 at Prairieland.  Thomas said he met Sharp and two other unidentified females in room "1-0-something." Sharp provided Thomas with a commercial trucking company address in Alvarado to pick up Song.  Thomas confessed to picking up Song from Alvarado and transporting him to known associate Zach Armstrong's address. Thomas said Song confessed to being the person who shot the Alvarado Police Officer. Thomas confessed to purchasing Song the clothing items from Wal-Mart.

46.     Thomas also said Song kept his cellular device in a faraday bag while he was present with him. Thomas said on or about July 7, 2025, he transported Song to a Home Depot on Coit Rd. in Dallas to hand him off to another person. Thomas said this hand-off of Song was facilitated by Sharp via Signal. Thomas indicated the person whom he handed-off Song too went by the moniker "crow."

47.     In another interview on July 14, 2025, Thomas confirmed he and Lynette Sharp,

Criminal Complaint - Page 18 of 22

hereafter styled, "SHARP" (Co-Defendant) conspired and executed a plan to pick up SONG from Alvarado and have him transported to Dallas at ARMSTRONG's residence. SONG was kept at ARMSRONG's residence for roughly 2 nights. Subsequent to SONG staying at ARMSTRONG's residence, THOMAS was tasked by SHARP to bring SONG to a Home Depot on Coit Rd. where he was passed off to an individual identified to investigators as "crow."

48.    THOMAS said he was notified via Signal chats from SHARP to meet CROW at the Home Depot on Coit Rd. and Lake Park Way in Dallas. THOMAS indicated the drop off time was set for 6:30PM. THOMAS indicated he was provided a vehicle description for CROW which was described by him as a silver/gray Kia SUV. THOMAS indicated he located CROW near the side closest to the Bank of America.

49.    THOMAS described CROW as a white female, blonde hair, and slightly chubby, but not fat. THOMAS said he backed up to CROW's vehicle, stating something to the effect of, "trunk to trunk." THOMAS stated SONG exited the rear seat of his vehicle and entered the rear seat of CROW's vehicle. Additionally, THOMAS indicated he passed on a tote bin to CROW which contained clothes, food, and additional supplies to keep SONG sustained during his active evasion as a wanted fugitive. THOMAS indicated SONG was wearing a blonde female wig which was previously passed along to him by SHARP during a brush pass at a Dallas Costco.

50.    THOMAS indicated SONG had a "Shadow Systems" pistol, specifically one SONG always carried on his person. Subsequent to SONG being transferred from THOMAS to CROW, investigators actively began attempting to identify CROW.

THOMAS did previously indicate MORRIS, one of the initial defendants had knowledge of CROW. FBI and Johnson County investigators spoke with MORRIS, who described CROW the same as mentioned above by THOMAS. Additionally, MORRIS indicated CROW's name to be REBECCA and she worked for a gas company in the mid-cities of DFW area.

51.    THOMAS corroborated MORRIS's statement, stating he recalled REBECCA aka CROW to have worked for ATMOS gas company and formerly at UPS. Utilizing tools available to law enforcement, Investigators identified CROW's vehicle as a 2018, Kia Sorento, bearing Texas license plate: MSF3801; See attached photograph:



52.    Per NCIC/TCIC inquiry, the 2018 Kia Sorento bearing Texas License plate MSF3801 plate is registered to REBECCA MORGAN ("MORGAN"), DOB: XX/XX/2001. Investigators contacted the Texas Workforce Commission, who verified MORGAN was employed with ATMOS and previously worked for UPS. According to resources available to law enforcement, MORGAN resided at XXXX Meadowcreek Dr.

Apt XXXX, Dallas, TX 75248.

53.     On July 15, 2025, at approximately 4:28 pm, FBI agents located MORGAN at

MORGAN's workplace, an ATMOS located at XXXX Mapleshade Ln, Plano, Texas

75075. Agents asked if SONG was located at MORGAN's residence to which MORGAN

replied that SONG was not, and that agents could talk to MORGAN's lawyer.

54.     On July 15, 2025, at approximately 4:57 pm, FBI SWAT executed a search

warrant at MORGAN's residence, XXXXX Meadowcreek Dr. Apt XXXX, Dallas, TX

75248 and took SONG into custody.

55.     On July 9, 2025, a federal criminal complaint was signed and filed against Song,

charging Song with three counts of attempting to murder a federal officer and aiding and

abetting, in violation 18 U.S.C. §§ 1114(a)(3), 1113, and 2; and three counts of

discharging a firearm during and in relation to, and in furtherance of, a crime of violence,

in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.  The investigation into Song and the

other conspirators who attacked the Prairieland Detention Center on July 4th is also

investigating the offenses of: (1) 18 U.S.C. § 371, conspiring to commit offenses against

the United States; (2) 18 U.S.C. § 111, assaulting federal officers while engaged in, or on

account of the performance of official duties; and (3) 18 U.S.C. § 1361, injuring or

committing any depredation against property of the United States.

## CONCLUSION

56.    Based upon the foregoing facts, I submit there is probable cause to believe that

**REBECCA MORGAN** was aware of the offenses committed against the United States

by Song and the other coconspirators on July 4th, and **MORGAN** did assist Song in

order to hinder Song's apprehension, trial, and punishment, in violation of 18 U.S.C. § 3.


Special Agent Paul Poston
FBI

Subscribed and sworn to before me on this __17__ day of July, 2025, in Fort
Worth, Texas at __1:25__ a.m./p.m.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

**Criminal Complaint - Page 22 of 22**